COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH



NO. 2-08-330-CR

ALLAN SHANE WESTFALL                                                      APPELLANT

V.

THE STATE OF TEXAS                                                               STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION[1]

------------

I.     Introduction

Appellant Allan Shane Westfall was charged with the offense of failure to identify as a fugitive.[2]  He was convicted after a jury trial and sentenced to

---

[1] ...  *See* Tex. R. App. P. 47.4.

[2] ...  The information charged Appellant with intentionally giving a false or fictitious name, address, or date of birth to a peace officer while lawfully arrested or detained and while a fugitive from justice with a valid arrest warrant outstanding.  *See* Tex. Penal Code Ann. § 38.02(b) (Vernon Supp. 2009).  An

one year of jail confinement and a fine of $4,000. In three points, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction and complains that the trial court abused its discretion by excluding evidence crucial to his defense. We reverse the conviction and judgment of the trial court and remand this cause for a new trial.

II.     Factual and Procedural Background

On November 13, 2006, at 8 p.m., Officer Todd Schuler stopped Appellant's vehicle because of a defective license plate light. *See* Tex. Transp. Code Ann. § 502.409(a)(6) (Vernon Supp. 2009). Officer Schuler testified at trial that when he approached Appellant's vehicle, he noticed Appellant "was extremely nervous" and stated he had left his driver's license at home. Officer Schuler stated that Appellant told him that his name was "Al Westfall."

Testifying from his report because he did not remember what date of birth Appellant gave him, Officer Schuler said Appellant gave a social security number with the last four digits of 9363, gave a date of birth of 6/28/74, and stated that he was thirty years old. Officer Schuler returned to his vehicle to ask Denton County police dispatch to verify Appellant's identity and driver's license status.

---

offense under this subsection is a Class A misdemeanor when the defendant is a fugitive from justice at the time of the offense. *Id.* at § 38.02(d)(2).

2

Officer Schuler testified that dispatch told him Appellant's date of birth was actually 6/28/75, the social security number was incorrect, and Appellant had three outstanding warrants from Dallas County. The officer then returned to Appellant's vehicle and again asked for Appellant's name, social security number, and date of birth. Officer Schuler testified Appellant gave the same information, at which point he asked Appellant to step out of his vehicle, conducted a pat-down search of Appellant, and handcuffed him. Officer Schuler testified that after being handcuffed, Appellant admitted he had given the wrong information and provided Officer Schuler his correct social security number and correct year of birth—1975. Officer Schuler placed Appellant under arrest and placed him in the back of the police car. Officer Schuler further testified that he conducted a search of Appellant's vehicle and found his driver's license in a "cut-out" of the dashboard of his vehicle, which would have been within Appellant's reach when he was in the car. Officer Schuler testified that, based on his training and experience, he believed Appellant intentionally gave him a false date of birth.

Appellant's defensive theory, explained by his counsel in opening statement and in colloquies with the trial court, was that Appellant told Officer Schuler the incorrect year of birth in an attempt to explain that the information in the Denton County system differed from the correct date of birth on his

3

driver's license.  Officer Schuler stated he did not recall Appellant's explaining that Denton County had the wrong date of birth and social security number in its system.  If Appellant had provided that explanation, Officer Schuler testified he probably would have put that in the police report, but he was not sure he would have done so.  On cross-examination, Officer Schuler confirmed that, to his knowledge, his video camera was turned on that evening and the events were recorded; however, he did not have the tape and did not know what had happened to the tape.

During Appellant's case, he offered a file from a previous charge of failure to identify from Denton County in which his birth date was shown as 1974, rather than 1975, and the social security number was wrong, but the trial court concluded that he had failed to show relevance and excluded that evidence.

Appellant called one witness in his defense, Dana Cassidy, who testified that she was a friend of Appellant's and had known him since high school.  She testified that Appellant kept a piece of paper in his wallet with his license that explained his actual birthday due to an ongoing problem trying to prove his date of birth that summer because "the system [] had his birthday wrong."  Cassidy stated that Appellant had the same problem when he was arrested in June 2005.  Cassidy testified that Appellant called her on her cell phone at 8:01 p.m.

4

on the date of this incident and told her that he was being pulled over at that moment, and she heard Appellant talking with the officer at that time.

At that point, the State took Cassidy on voir dire. She explained that she heard the officer ask Appellant for his license and registration because he placed the "open" phone on the seat. The trial court instructed the jury to leave the courtroom for further voir dire examination of the witness, in which Cassidy stated she heard Appellant explain to the officer the problem with the date of birth, that the dates on his driver's license and in the system were different, and that the date of birth was wrong in the system. The trial court sustained the State's hearsay objection to this testimony.

III.    Legal Sufficiency of the Evidence

In his first point, Appellant contends that the evidence was legally insufficient to support the verdict because he was not lawfully detained by the officer at the time he allegedly gave the false information.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

During a routine traffic stop, an officer may demand identification, a valid driver's license, and proof of insurance from the driver, and the officer may detain the driver in order to check for outstanding warrants. *See Walter v.*

6

*State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); *Anderton v. State*, No. 03-08-00262-CR, 2009 WL 349144, at *2 (Tex. App.—Austin Feb. 13, 2009, no pet.) (mem. op., not designated for publication).   Texas Penal Code section 38.02(b) addresses the offense of failure to identify and states that,

> (b)    A person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:
>
> > (1)    lawfully arrested the person;
> >
> > (2)    lawfully detained the person; or
> >
> > (3)    requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense.
> > . . . .
>
> (d)    If it is shown on the trial of an offense under this section that the defendant was a fugitive from justice at the time of the offense, the offense is:
>
> > . . .
> >
> > (2)    a Class A misdemeanor if the offense is committed under Subsection (b).

Tex. Penal Code Ann. § 38.02(b), (d)(2).[3]

An officer may initiate a traffic stop if he reasonably suspects that the driver has committed a traffic violation.  *Whren v. U.S.*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772–73 (1996); *Ford v. State*, 158 S.W.3d 488, 492 (Tex.

---

[3]... *See St. George v. State*, 237 S.W.3d 720, 724 (Tex. Crim. App. 2007).

Crim. App. 2005).  A traffic stop "significantly curtails the freedom of movement for the driver and passenger," making it a Fourth Amendment seizure equivalent to a temporary detention.[4]  *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984); *Davis v. State*, 947 S.W.2d 240, 242–45 (Tex. Crim. App. 1997); *St. George v. State*, 197 S.W.3d 806, 815 (Tex. App.—Fort Worth 2006) (op. on reh'g), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007); *see also Johnson v. State*, 912 S.W.2d 227, 234–35 (Tex. Crim. App. 1995) (holding that an investigative detention occurs when a police officer restrains a person's freedom of movement, either by physical force or by show of authority).  The U.S. Supreme Court held in *Brendlin v. California* that, for a police-ordered traffic stop, a seizure occurs the moment a driver's car comes to a halt on the side of the road.  551 U.S. 249, 257, 127 S. Ct. 2400, 2410 (2007).

The jury heard uncontradicted evidence that the officer initiated a valid traffic stop for a license plate violation and that Appellant gave him a false date of birth and social security number twice during the detention.  The jury heard the time line for the stop in which Appellant gave Officer Schuler a disparate

---

[4] ... The test distinguishing a police encounter from a police detention is whether "taking into account all circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  *See State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008).

birth date and age before the officer went to his patrol car to investigate his driver's license status and any potential warrants. The jury further heard Officer Schuler's testimony that, after he obtained information from dispatch as to Appellant's correct date of birth and that the social security number he gave was wrong, Appellant repeated the false information, causing Officer Schuler to request that Appellant step out of his car to be patted down and handcuffed.

Appellant argues that he was not "physically forced to yield to the officer" and cites *Quick v. State* to support his legal sufficiency challenge. 999 S.W.2d 79, 81 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding appellant not lawfully detained or arrested when he gave false information). However, *Quick* involved a police confrontation when a police officer knocked on the defendant's door, and the defendant, who opened the door (but stood behind burglar bars across the doorway), at first gave a false name but then acknowledged who he was, saying, "It's me, it's me," and surrendered to the officer when told that the officer had an arrest warrant. *Id.* at 80. The court of appeals held that the evidence was legally insufficient to support a failure to identify conviction because the appellant had not been arrested and had not yielded to the officer's show of authority at the time he gave a false name and, therefore, was not detained as required by the statute. *Id.* at 80–81.

In this case, Officer Schuler lawfully detained Appellant the moment he pulled his vehicle over for a legitimate traffic law violation. *See Brendlin*, 551 U.S. at 262, 127 S. Ct. at 2410; *Berkemer*, 468 U.S. at 439, 104 S. Ct. at 3150; *Davis v. State*, 947 S.W.2d 240, 242–45 (Tex. Crim. App. 1997); *see also Waalee v. State*, No. 09-07-00245-CR, 2008 WL 5622656, at *2 (Tex. App.—Beaumont Feb. 11, 2009, no pet.) (mem. op., not designated for publication) (stating that it would be reasonable to infer that by stopping his vehicle after the officer turned on his overhead lights, the driver was aware that he was "being detained by a law enforcement officer"). Appellant yielded to Officer Schuler's show of authority when Appellant pulled his vehicle over for the traffic stop, and this detention continued while he provided his incorrect identification and waited for the officer to check it. *See Walter*, 28 S.W.3d at 542. Furthermore, Appellant's meeting with Officer Schuler was not a consensual encounter; it was a lawful detention for a traffic violation that had already occurred and continued based upon reasonable suspicion. It is unlikely that Appellant felt "free to leave" or "go about his business" during the traffic stop. *See Garcia-Cantu*, 253 S.W.3d at 242; *see also Berkemer,* 468 U.S. at 436–37 (stating that "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so").

10

Viewing the evidence in a light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that Appellant intentionally gave false information to Officer Schuler while he was lawfully detained. *See* Tex. Penal Code Ann. § 38.02(b); *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We hold that the evidence is legally sufficient to support the trial court's judgment and overrule Appellant's first point.

IV.    Factual Sufficiency of the Evidence

Appellant argues in his second point that the evidence was factually insufficient to support the verdict because of the evidence of a problem with Appellant's identification information in the Denton County police system. We will liberally interpret Appellant's brief as challenging the factual sufficiency of the "intent" element of the false identification offense because of Appellant's defensive theory that he gave false *and* correct identification information to Officer Schuler as an attempt to remedy a mistake in the police system. A person "acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). A factfinder may infer intent from the accused's acts and words as well as the surrounding circumstances. *Baldwin v. State*, 264 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

11

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations,

"particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9.

In his factual sufficiency argument, Appellant points out that there was no contradictory testimony because the evidence about his version of what he told the officer was excluded. He argues that he was thus precluded from showing his side of the case. Nevertheless, he argues that the evidence supporting the verdict is so weak as to be factually insufficient. Viewing the State's evidence in a neutral light, Appellant's actions showed that he intentionally gave a false date of birth and false social security number. Although most of her testimony was excluded, the jury was able to hear Cassidy's testimony that there was an ongoing problem with Appellant's date of birth in the Denton County records and that Appellant carried a piece of paper in his wallet because "in the summer in the system they had his birthday wrong." The jury was free to believe or disbelieve all or part of either Cassidy's or Officer Schuler's testimony, and we give deference to the jury's findings. *See Johnson*, 23 S.W.3d at 8–9. Based on all the evidence regarding Appellant's acts and words, a jury reasonably could have accepted Officer Schuler's testimony that Appellant intended to give false information to Officer Schuler during the traffic stop. *See* Tex. Penal Code Ann. § 6.03(a) (Vernon Supp. 2009); *Baldwin*, 264 S.W.3d at 242.

Viewing the evidence in a neutral light, we cannot say that the evidence is so weak that the jury's determination that Appellant intentionally gave false information to an officer while he was lawfully detained was clearly wrong or manifestly unjust. We also cannot say that any evidence favorable to Appellant so greatly outweighs the evidence supporting the conviction that the jury's determination is unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. We hold that the evidence is factually sufficient to support the verdict and overrule Appellant's second point.

V.      Exclusion of Evidence

Appellant argues in his third point that the trial court improperly excluded evidence consisting of testimony from Cassidy and the file from his prior Denton County conviction.

A.      Exclusion of Dana Cassidy's Testimony

Appellant argues that the trial court improperly excluded Cassidy's testimony about what she overheard on the cell phone while Appellant was talking with Officer Schuler during the traffic stop. Specifically, the trial court excluded as hearsay Cassidy's testimony on voir dire outside the presence of the jury, as follows:

Q.  And what did you hear?

A.  He gave his name, Allan Shane Westfall, and his date of birth.

14

Q. Okay, and what—did he give any explanation about the problem with the date of birth?

A. Yes.

Q. And what did he say?

A. He told him that his date of birth is wrong.

Q. Wrong in what way?

. . . .

A. The—the date of births are different. They're not the same on the driver's license as they are in the system.

Appellant offered Cassidy's testimony as evidence of Appellant's behavior at the time, and as to what Cassidy perceived, as a "present sense impression," as an exception to the hearsay rule pursuant to Texas Rule of Evidence 803(1). "Hearsay" is a statement, other than one made by the declarant while testifying at trial or during a hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). One of the listed exceptions to the hearsay rule is testimony constituting a "present sense impression," which is defined as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Tex. R. Evid. 803(1).

The rationale for the present sense impression exception is that (1) the report at the moment of the thing then seen or heard is safe from any error

15

resulting from defect of memory of the declarant, and (2) there is little or no time for a calculated misstatement. *Fischer v. State*, 252 S.W.3d 375, 380 (Tex. Crim. App. 2008). Narratives, opinions, or calculated statements are not admissible as present sense impressions. *See id.* at 381.

Appellant claims that Cassidy's perception of the conversation between Appellant and Officer Schuler, as heard through Appellant's cell phone, qualified as a present sense impression. It is unclear whether Appellant is contending that Cassidy or Appellant is the "declarant." Cassidy did testify that she heard Appellant speaking with Officer Schuler during the traffic stop and that Appellant's statements were contemporaneous to the event. *See Russo v. State*, 228 S.W.3d 779, 808–09 (Tex. App.—Austin 2007, pet. ref'd). However, Cassidy merely overheard Appellant answering questions from the officer while his cell phone was open on the front seat; he was not describing the event that was happening at that time. His utterances were, at best, a defense of his predicament regarding his birth date to the officer during a routine traffic stop. *See Fischer*, 252 S.W.3d at 381 (stating that 803(1) is "predicated on the notion that the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes").

The statements Cassidy overheard Appellant make to the officer were not explanatory or descriptive of the event transpiring at that time to qualify as a

16

present sense impression under rule 803(1). *See Fischer v. State*, 207 S.W.3d 846, 859 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008) (holding that rule 803(1) was not applicable when the officer did not merely explain or describe events but participated in and created the events in his recorded observations).

If Appellant is arguing that Cassidy is the "declarant," we disagree that her testimony as to what she heard constitutes a "present sense impression." First, Cassidy's only statement was her testimony at the trial. A statement, to qualify for the exception of "present sense impression," must be "other than one made by the declarant while testifying at a trial or hearing." Tex. R. Evid. 801(d). Second, her excluded testimony constituted her own reflective narrative of the conversation she personally overheard between Appellant and Officer Schuler. *See Fischer*, 252 S.W.3d at 381. Third, her testimony at trial was not made contemporaneously with the event she was describing but long afterward; thus, it was not a "present sense impression." *See Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993).

Nevertheless, Cassidy's testimony was not hearsay because it was not offered for the truth of the matter asserted. Tex. R. Evid. 801(d) (defining "hearsay" as an out-of-court statement offered as evidence to prove the truth

17

of the matter asserted). "An extrajudicial statement which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995) (holding patient application form admissible to show how defendant became a suspect); *Davis v. State,* 169 S.W.3d 673, 675–76 (Tex. App.—Fort Worth 2005, no pet.) (holding police testimony regarding anonymous tips that focused investigation on defendant as a suspect was admissible nonhearsay).

Appellant did not offer Cassidy's testimony describing his statements to the officer to show the truth of Appellant's correct birth date. That fact was undisputed. Her testimony was offered to show what she heard Appellant say to the officer—that he gave both his right and wrong birth date in an attempt to explain that a wrong birthday was listed in the system. Because Appellant was charged with giving false identification, what he said was demonstrative evidence, and her testimony offered to show what he said was not inadmissible as hearsay. *See Tamayo v. State*, 924 S.W.2d 213, 215 (Tex. App.—Beaumont 1996, no pet.) (holding typewritten statement by defendant alleged by State to be false as basis for perjury charge admissible as evidence of what defendant stated and as demonstrative evidence); *see also Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999) (listing of person in address

18

books of two alleged co-conspirators admissible as evidence of link between them); *Rezaie v. State,* 259 S.W.3d 811, 814 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding printout of credit application admissible to show application was made, not offered to show that information in application was true).

Cassidy's testimony was relevant to contradict Officer Schuler's version of the encounter in which Officer Schuler testified that Appellant gave the wrong birth date twice and that he did not recall any explanation of a mistake in the Denton County system. And Cassidy's testimony was relevant to Appellant's intent: to show why he provided the wrong birth date. The testimony was not inadmissible as hearsay, and the trial court abused its discretion by excluding it.[5]

---

[5]... In considering a trial court's ruling admitting or excluding evidence, we determine whether the trial court abused its discretion. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006). We will uphold a trial court's ruling on the admissibility of evidence as long as the trial court's ruling was within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when it so deviates from applicable guidelines and principles that the decision falls outside the zone of reasonable disagreement*. Gomez v. State*, 49 S.W.3d 456, 458 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

B.    Harm Analysis

Appellant contends he was effectively precluded from presenting his defense.  Exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital part of the case that exclusion effectively precludes the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002); *see* Tex. R. App. P. 44.2(a).  While the testimony describing Appellant's statements to Officer Schuler was relevant to the defensive theory that Appellant was trying to correct a mistake in the system, its exclusion did not "significantly undermine fundamental elements of the accused's defense." *Potier*, 68 S.W.3d at 665 (citing *United States v. Scheffer*, 523 U.S. 303, 315, 118 S. Ct. 1261, 1268 (1998)).  Appellant was able to argue his theory in opening statement, supported by testimony from Cassidy in the jury's presence, regarding a mistake in the system.  Where a defendant is not prevented from presenting the substance of his defense to the jury, his inability to present his case in the form and to the extent he desired does not constitute a denial of due process or other constitutional right. *See id.*

Instead, the rule that applies to this error in excluding evidence is Texas Rule of Evidence 103(a). Tex. R. Evid. 103(a) ("Error may not be predicated on a ruling which admits or excludes evidence unless a substantial right of the

20

party is affected . . . ."). A nonconstitutional error that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b). The erroneous admission of evidence does not affect substantial rights if, after examining the record as a whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In assessing the likelihood that the error adversely affected the jury's verdict, the appellate court should consider everything in the record, including the evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered with other evidence in the case. *Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also consider the jury instructions, the State's theory, and any defensive theories, closing arguments, and even voir dire, if applicable. *Id*.

In this case, the evidence admitted directly bearing on the issue of failure to identify consisted solely of Officer Schuler's testimony. The State's theory was that Appellant gave a false identity in fear of Officer Schuler discovering that he had outstanding warrants. Appellant's opposing theory was that he gave the fictitious information in conjunction with his correct birth date to explain a discrepancy in the Denton County records. As the State points out, Cassidy was able to testify to some information relevant to Appellant's

21

defensive theory, including an ongoing problem of trying to prove his date of birth, that he carried a piece of paper in his wallet because the "system" had his birthday wrong, that he telephoned Cassidy at the time he was stopped, and that he had previously been arrested on June 1, 2005, in Denton County for failure to identify. The State also points out that Appellant's counsel argued his theory in opening statement when Appellant's counsel stated:

> Well, I agree with a lot of what [the prosecutor] said except one little thing that she hasn't mentioned, is that I'm going to show later on, the evidence will show that in the Denton County system his birthday got put in incorrect. They have it—at a certain point they put it in as 6/28/74. And so he's been battling a mistake that the Denton County System has made.
>
> . . . .
>
> And so when you go to hear the evidence, you might want to take into account the alleged mistake the State has made here. Thank you very much.

But despite the foregoing, Cassidy's specific testimony that was excluded—that Appellant told Officer Schuler of the mistake and his correct birth date—went to the heart of Appellant's sole defensive theory. The offense with which Appellant was charged was based on what he said to Officer Schuler. The State's theory hinged on Officer Schuler's testimony as to what Appellant said to him, and Cassidy's version of what Appellant said directly contradicted that of Officer Schuler. Moreover, because the testimony was

22

excluded, the State was able to urge the jury in closing argument, "Don't go back there and go, well, the girlfriend came in and it looks like she has a story to tell, [] it doesn't go with this case, and you're not to consider it."

Appellant's counsel, in response, was able to argue only that the evidence simply was not at the level of proof beyond a reasonable doubt because "it all comes down to one officer" and "what do you believe about his testimony at this point?" Because of the exclusion of what Cassidy heard Appellant say, Appellant was unable to present or argue his contradictory version of what he told the officer, the critical event on which the State's entire case rested. Appellant was deprived of the right to present the key portion of his defensive theory. We conclude that the trial court's exclusion of Cassidy's testimony could have adversely influenced the jury and had more than a slight effect on the verdict. We hold that the wrongful exclusion of the evidence affected Appellant's substantial rights. *See, e.g., Melgar v. State*, 236 S.W.3d 302, 309 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding, where evidence presented opposing versions of events, improper exclusion of character witness evidence that defendant was considered honest affected defendant's substantial rights); *Cruz v. State*, 122 S.W.3d 309, 315 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding wrongful exclusion of identification testimony providing defendant with alibi deprived appellant of defensive evidence and

affected his substantial rights); *Miller v. State*, 42 S.W.3d 343, 346 (Tex. App.—Austin 2001, no pet.) (holding exclusion of testimony that individual repeatedly assaulted and beat appellant lent credibility to her duress defense). We sustain this portion of Appellant's third point.

### C.    Exclusion of File Contents

Appellant also asserts that the trial court improperly sustained the State's objection to Appellant's evidence "from a prior felony conviction show[ing] incorrect information about [] [A]ppellant." The objected-to evidence consisted of a clerk's file containing Appellant's unrelated 2005 case that showed his name and social security number incorrectly placed in the Denton County computer system. Officer Schuler was unable to testify about this case file or any clerical mistake because he retrieved Appellant's date of birth and social security information based on warrants out of Dallas County, not Denton County. The trial court sustained the State's objection based on relevance.

Appellant does not further develop an argument that the evidence regarding the Denton County clerk's mistake in the 2005 case was relevant to his identification on Dallas warrants. Appellant does not explain nor provide citation to authority to support how the file in question would have supported his theory. This argument is inadequately briefed, and we decline to address it. *See* Tex. R. App. P. 38.1(h); *Tong v. State*, 25 S.W.3d 707, 710 (Tex.

24

Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *see also Harkins v. State*, 268 S.W.3d 740, 752 (Tex. App.—Fort Worth 2008, pet. ref'd).  We overrule the remainder of Appellant's third point.

VI.    Conclusion

Having sustained part of Appellant's third point that the testimony of Cassidy was erroneously excluded as hearsay, we reverse the conviction and judgment of the trial court and remand this cause for a new trial.


                                        ANNE GARDNER
                                        JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 7, 2010